390 A.2d 266

**SIGNAL CONSUMER DISCOUNT COMPANY, Plaintiff,**

v.

**Anthony L. BABUSCIO and Barbara L. Babuscio, Original Defendants Appellants,**

v.

**OLD REPUBLIC LIFE INSURANCE COMPANY, Additional Defendant Appellee.**

Superior Court of Pennsylvania.

Argued April 18, 1978.

Decided July 12, 1978.

Edward A. Olds, Pittsburgh, for appellants.

Sidney Baker, Pittsburgh, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CER-CONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HOFFMAN, Judge:

This case presents an issue of first impression in Pennsylvania: do the Pennsylvania Rules of Civil Procedure permit a defendant in a mortgage foreclosure action to join an additional defendant whose purported liability to either the mortgagee or the original defendant is based upon an assumpsit claim? The lower court answered this question in the negative, sustained appellee's preliminary objections, and dismissed appellants' third party complaint. We affirm.

On March 31, 1977, Signal Consumer Discount Co. (hereinafter Signal) filed a complaint in mortgage foreclosure against appellants, Anthony and Barbara Babuscio, in the Allegheny County Court of Common Pleas. The complaint alleged that on December 6, 1974, Signal loaned appellants $5366.40; as security, appellants executed a mortgage with Signal as mortgagee on their residential property at 2824 Connecticut Avenue in Pittsburgh. After November, 1976, appellants failed to meet the monthly loan payment obligations; a principal balance of $3649.74 remained outstanding. Signal's mortgage foreclosure action requested this sum plus an attorney's commission of 15% of the unpaid balance.

On April 27, 1977, appellants filed an answer and new matter. Appellants admitted that they had secured a loan from Signal and executed a mortgage in its favor, but denied defaulting on their loan obligations. In new matter, appellants made the following allegations: Signal conditioned its extension of credit upon appellants' purchase of a disability insurance policy. Pursuant to a continuing business relationship, Signal referred appellants to appellee, Old Republic Life Insurance Co. (hereinafter Old Republic or appellee). On December 6, 1974, the same date as the loan and mortgage transaction, appellants purchased the required policy. This policy provided that if appellant Anthony Babuscio suffered total disability, Old Republic would pay

appellants' monthly loan obligations to Signal directly during incapacity.[1] When Anthony Babuscio suffered total disability in May 1976, Signal sought and accepted payment of the monthly loan obligation from appellee instead of appellants over the ensuing six month period. However, after November, 1976, despite the continuing and total nature of Mr. Babuscio's disability, Signal stopped demanding and receiving payments from appellee. In short, appellants' new matter charged that the mortgage transaction included three interrelated documents: the loan note, the mortgage, and the disability insurance policy. These documents, read together, imposed a contractual duty upon Signal to seek payment of monthly loan obligations from appellee rather than appellants in the event of Mr. Babuscio's total disability. Signal allegedly failed to observe this duty.

In its reply to appellants' new matter, Signal denied that it conditioned the loan upon appellants' purchase of a disability insurance policy from Old Republic; instead, Signal asserted that it had merely suggested the advisability of this insurance. When appellants indicated a desire to obtain disability insurance coverage, Signal suggested that they contact Old Republic. Signal conceded that, under the insurance contract, Old Republic would be primarily liable for payment of appellants' monthly loan obligations during periods when Mr. Babuscio suffered total disability. Further, Signal admitted that after it first learned of Mr. Babuscio's disability, it received and accepted $376.99 from Old Republic in partial payment of appellants' obligations. However, Old Republic stopped payment, and Signal did not protest, when the Babuscios failed to provide corroboration of the total disability claim. Finally, Signal averred that it did not have sufficient information to form a belief as to whether Mr. Babuscio's total disability had ceased prior to the initiation of its mortgage foreclosure action.

1. Appellants attached a copy of this policy to their answer and new matter; the policy designates Signal as the creditor policy holder and contains the alleged provision.

On June 3, 1977, appellants filed a third party complaint against appellee, Old Republic, which sought to join appellee as an additional defendant. This complaint alleged that Signal and Old Republic enjoyed an ongoing business relationship in which Signal, acting as Old Republic's agent, required its credit customers, including appellants, to secure an Old Republic disability insurance policy. Although the insurance policy required Old Republic to pay appellants' monthly loan obligations directly to Signal during Anthony Babuscio's total disability, Old Republic discontinued payments a few months after Babuscio suffered a totally incapacitating auditory illness. As a consequence, appellants' monthly loan obligations were not satisfied and Signal, pursuant to an acceleration clause in the mortgage document, demanded payment of the entire balance of the loan obligation. Appellants asked the lower court to find Old Republic solely liable to Signal or liable over to appellants for the amount of the unpaid balance plus any attorney's commission owed to Signal.

On July 20, 1977, Old Republic filed preliminary objections to appellants' third party complaint. Appellee asserted that appellants' assumpsit claim did not state a cause of action cognizable in a mortgage foreclosure action. On August 5, 1977, the lower court sustained appellee's preliminary objections and dismissed appellants' complaint. This appeal followed.[2]

Appellants contend that Rule 2252 of the Pennsylvania Rules of Civil Procedure[3] permits appellee's joinder as

**2.** Our court has jurisdiction to entertain this appeal because an order sustaining preliminary objections and dismissing a complaint against an additional defendant is a final and appealable order. See *Alexander v. Mastercraft Constr. Co.*, 455 Pa. 579, 317 A.2d 278 (1974); *Lamoree v. Penn Central Transp. Co.*, 238 Pa.Super. 380, 357 A.2d 595 (1976); The Act of July 31, 1970, P.L. 673, No. 223, art. III, § 302; 17 P.S. § 211.302.

**3.** Pa.R.Civ.P. 2252; 42 Pa.C.S. § 2252 provides, in pertinent part:
"(a) In any action the defendant or any additional defendant may, as the joining party, join as an additional defendant any person whether or not a party to the action who may be alone liable or liable

an additional defendant, even though Signal filed a mortgage foreclosure, rather than an assumpsit, action. Appellee responds that Rules 1141–1150 of the Pennsylvania Rules of Civil Procedure,[4] which govern mortgage foreclosure actions, displace Rule 2252 and preclude joinder of an additional defendant solely on the basis of an assumpsit claim. We believe that a close analysis of the text and spirit of Rules 1141–1150 confirms appellee's argument.

Appellee specifically directs our attention to four procedural rules pertaining to mortgage foreclosure actions; appellee asserts that these rules, read together, bar its joinder in the instant case. First, and most importantly, Rule 1141 defines a mortgage foreclosure action and delineates the interrelationship between specific rules on mortgage foreclosure actions and generally applicable civil procedural rules:

"(a) As used in this chapter, 'action' means an action at law to foreclose a mortgage upon any estate, leasehold or interest in land *but shall not include an action to enforce a personal liability.*[5]

over to him on the cause of action declared upon by the plaintiff or jointly or severally liable thereon with him, or who may be liable to the joining party on any cause of action which he may have against the joined party arising out of the transaction or occurrence or series of transactions or occurrences upon which the plaintiff's cause of action is based."

Rule 2251 defines "action", as this term is employed in Rule 2252, as "any civil action or proceeding at law or in equity brought in or appealed to any court of record which is subject to these rules." Our appellate courts have repeatedly stressed the need for a flexible and expansive interpretation of Rule 2252's range and operation. See *Free v. Lebowitz*, 463 Pa. 387, 344 A.2d 886 (1975); *Galdo v. First Pennsylvania Bank*, N.A., 250 Pa.Super. 385, 378 A.2d 990 (1977); *Ianni v. Pantalone*, 238 Pa.Super. 548, 361 A.2d 772 (1976); *Martinelli v. Mulloy*, 223 Pa.Super. 130, 299 A.2d 19 (1972).

4. Pa.R.Civ.P. 1141–1150; 42 Pa.C.S. §§ 1141–1150.

5. 3A Anderson, Pennsylvania Civil Practice § 1141.5 comments: "The rules do not apply to an action to enforce a personal liability upon the bond or other obligation accompanying a mortgage nor upon an indemnity agreement or duty to indemnify arising from either the original transaction between the mortgagor and mortgagee or with subsequent transferees of the property. Any personal liabili-

"(b) Except as otherwise provided in this chapter, the procedure in the action shall be in accordance with the rules relating to the action of assumpsit." (Emphasis added). Next, Rule 1144 requires a plaintiff-mortgagee to name certain parties, including the mortgagor and real owner, as defendants in a mortgage foreclosure action; according to appellee, a plaintiff's naming of a person who had merely assumed the mortgagor's obligation but is not in possession would be improper under this rule.[6] Third, Rule 1146 provides that a plaintiff-mortgagee ". . . may state in the complaint two or more grounds for foreclosure but may not state more than one cause of action." Read in conjunction with Rule 1141, this section prevents a mortgagee from joining a contractual claim on a mortgage bond to a mortgage foreclosure claim for the judicial sale of the mortgaged property. *See Meco Realty Co. v. Burns,* 414 Pa. 495, 200 A.2d 869 (1964); *but see Kretschman v. Stoll,* 238 Pa.Super.Ct. 51, 352 A.2d 439 (1975), allocatur refused, 238 Pa.Super. xxxvii (dictum).[7] *See also* Goodrich-Amram 2d, supra,

ty can only be enforced in the same manner as though there were no mortgage. Ordinarily this will be by an action of assumpsit, although the case may arise where relief would be obtainable under other forms, such as foreign or fraudulent debtor's attachment or a proceeding in equity." (Footnotes omitted.)

**6.** 8 Goodrich-Amram 2d, Procedural Rules Service with Forms, § 1144(a): 10 at 464–65 states: "The question of assumption has nothing to do with the grantee as a party in a foreclosure action. If the grantee is the terre-tenant at the time the action is brought, he is a proper party, whether he has assumed the debt or not. If the grantee has previously conveyed away his interest, and is no longer in title, he is not a proper party, whether he has assumed the debt or not. The assumption of the debt is important on the question of personal liability for the debt; it has nothing whatever to do with the question of proper parties in an action of foreclosure de terris." (footnotes omitted).

**7.** In *Kretschman v. Stoll,* supra, the mortgagees instituted a foreclosure action in which they requested both an in rem judgment against the property and in personam judgment against the mortgagors. After sale of the property, the mortgagees instituted an action under the Deficiency Judgment Act, Act of July 16, 1941, P.L. 400, § 1; 12 P.S. § 2621.1 et seq. The mortgagees secured a deficiency judgment; subsequently, the mortgagors filed a petition to strike this judgment. Our Court affirmed the lower court's refusal to strike the deficiency judgment, despite the mortgagors' contention that the mortgagees

§ 1146 at 477. Finally, appellee cites Rule 1148 which permits a defendant to plead a counterclaim in a mortgage foreclosure action *provided* that the ". . . counterclaim . . . arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose." *See also Porter v. Levering*, 330 Pa. 392, 199 A. 482 (1938).[8] In sum, because a mortgage foreclosure action is strictly "de terris" in nature, neither a mortgagee-plaintiff nor a mortgagor-defendant can join a party who has no interest in the controverted property.

We agree with appellee that Rules 1141–1150, read together, preclude the joinder of a third party solely on the

could not properly obtain both a judgment against the land and an in personam judgment in a mortgage foreclosure action. We held that the mortgagors had not presented this contention in the mortgage foreclosure action and had thus waived their right to present it for our consideration. See *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). In dictum, we observed: "It is our opinion that the liberal philosophy of the Rules [of Civil Procedure] which permits various actions to be joined in one complaint extends to actions of mortgage foreclosure and assumpsit. Therefore, while the appellees should have raised their demand for an in rem judgment in one court and for an in personam judgment in another, the failure to do so is not fatal to this case. For purposes of judicial economy, moreover, it is preferable to have all actions based on one set of facts brought at one time and tried together." Supra, 238 Pa.Super. at 55, n.1, 352 A.2d at 442. In a Concurring Opinion, HOFFMAN, J., agreed with the Majority that appellants had waived their contention, but expressed his belief that a mortgagee could not properly obtain both an in personam and an in rem judgment in a mortgage foreclosure action.

8. 8 Goodrich-Amram 2d, supra, § 1148 at 488 elaborates: "No defendant may now set off a claim against the plaintiff simply because its nature is contractual or quasicontractual, as allowed in assumpsit actions.

"The claim must now arise, in some manner, from the mortgage relationship. A counterclaim could be filed, for example, for damages for breach of warranty of title to the mortgaged premises. Also, it has been held that defendant may counterclaim for the balance due from plaintiff on a construction contract in connection with which the mortgage was given. On the other hand, a counterclaim could not be filed for professional services rendered by the mortgagor to the mortgagee, at least if unrelated to the mortgage." (footnotes omitted).

basis of an assumpsit claim. The very definition of a mortgage foreclosure action under Rule 1141(a) excludes "an action to enforce a personal liability"; this restriction is essential to preserve the "de terris" identity of a mortgage foreclosure action and is equally binding on a mortgagee-plaintiff and a mortgagor-defendant.[9] Rule 1148, which allows a defendant to assert a contractual counterclaim arising out of a mortgage transaction against the mortgagee, constitutes the only exception to this rule. Because appellants' assertion of an assumpsit claim against a third party would nullify the explicit prohibition of Rule 1141(a) and because no other mortgage foreclosure rule sanctions this personal liability claim, we hold that the lower court correctly sustained appellee's preliminary objections and dismissed appellants' third party complaint.[10]

Order affirmed.

SPAETH, J., dissents:

9. Appellants rely on *Mangin v. Huntingdon, Inc.*, 71 D & C 2d 367 (Bucks County 1976) (a defendant in an action to quiet title may join his grantor-warrantor as an additional defendant; Rule 2252 permits joinder despite combination of in rem nature of quiet title claim and personal nature of assumpsit claim) and *Shaffer v. Algatt*, 60 D & C 2d 571 (Lehigh County 1971) (Rule 2252 allows defendant in ejectment action to join a remote grantor who allegedly misdescribed property conveyed by warranty deed). This reliance is misplaced. These cases did not involve mortgage foreclosure actions and, consequently, the defendant could join additional defendants without regard to the restrictions imposed by Rules 1141–1150.

10. In so holding, we do not express any opinion as to whether appellants have a valid defense to the mortgage foreclosure action in light of their allegation that Signal breached the contractual understanding by failing to seek payment from appellee rather than appellants. Moreover, our holding does not necessarily leave a mortgagor, similarly situated to appellants, wholly bereft of meaningful protection. Under some circumstances, a stay or injunction against a mortgage foreclosure proceeding might be appropriate. For example, if a mortgagee and insurance company knew that a mortgagor was totally disabled, yet collusively agreed that the mortgagee would institute a mortgage foreclosure action instead of seeking payment from the insurance company, as it assured the mortgagor it would do, then a stay or injunction against the mortgage foreclosure action might be appropriate until a court could determine the validity of the mortgagor's assumpsit claim against the insurance company. We

Appellee concedes, and the Majority does not dispute, that appellants may sue appellee in assumpsit and then request that the foreclosure and assumpsit actions be combined for trial. I see no distinction between that procedure and the procedure appellants attempted here.

intimate no opinion as to the availability of such relief in the instant case. Cf. footnote 5, supra.