**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4001
_____

In re:  PATRICIA R. GRAY,
                                                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:13-cv-02037)
District Judge:  Honorable John R. Padova

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 5, 2014

Before: AMBRO, SHWARTZ and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 7, 2014)
_____

OPINION
_____

PER CURIAM

The background of this case stretches over thirty years.  We will try to highlight

only the most relevant details.  In 1981, Patricia Gray and her sister, Gwendolyn Jackson,

entered into a 30-year mortgage in the amount of $52,000 secured by a property at 2276-

78 North 51st Street in Philadelphia.  In 1996, Mellon Bank, N.A., then the holder of the

mortgage, instituted foreclosure proceedings against the sisters.[1]  After many years and an assignment of the mortgage to Credit Based Asset Servicing and Securitization ("Credit Based"), Jackson and Credit Based stipulated to a judgment order that entered summary judgment in favor of Credit Based against Jackson.  Gray continued to defend against the suit, and, on January 31, 2006, won a verdict after a non-jury trial.

Subsequently, and after Gray commenced a different bankruptcy action, Credit Based filed a "praecipe to discontinue the mortgage foreclosure action without prejudice."  Gray moved to strike the filing.  The trial court denied and dismissed her motion.  The court further ruled that Credit Based could file a new foreclosure action against Gray but that it was precluded from pursuing an in personam action against her. Gray appealed to the Pennsylvania Superior Court.

The Superior Court ruled in Gray's favor, reversing and remanding for judgment to be entered on the verdict.  In doing so, the Superior Court noted that there was no authority "that would countenance discontinuance of a case after a non-jury trial has concluded and the trial court has rendered its decision."  Mellon Bank, N.A., v. Jackson, No. 1987 EDA 2008, slip op. at 7 (Pa. Super. Ct. Sept. 9, 2010) (attached to Appellant's Informal Brief at Ex. B).  Viewing the discontinuance [which is typically a pre-trial voluntary termination by the plaintiff] as a collateral attack on the verdict, the Superior Court ruled that Credit Based and the trial court were wrong to believe a discontinuance was warranted because an issue remained pending, namely that the trial court had not

---

[1] The foreclosure complaint is attached to Appellant's Informal Brief as Exhibit C.

2

ruled on whether the defendants were in default on the mortgage. Id. at 8. The Superior Court stated that "the record belie[d] such a conclusion." Id. The Superior Court explained that Jackson was in default and that Gray was not liable. Id. Noting that no post-trial motions challenged the verdict, the Superior Court ruled that "Credit Based should not have been permitted to simply ignore the verdict by filing an untimely motion for discontinuance in order to relitigate a matter finally concluded against it." Id. at 9. On May 11, 2011, pursuant to the Superior Court's order, the trial court entered judgment in favor of Gray and against Credit Based.

On April 25, 2011, shortly before the entry of judgment, Gray filed for Chapter 13 bankruptcy protection. On April 18, 2012, the Bankruptcy Court confirmed Gray's plan, which did not include payments for the North 51st Street mortgage. On September 7, 2012, PennyMac Corp. ("PennyMac"), which had been assigned the mortgage on August 10, 2012, moved for relief from the automatic stay. PennyMac alleged that the "commencement and/or continuation of the mortgage foreclosure proceedings by reason of non-payment of monthly mortgage payments were stayed by the filing of a Chapter 13 Petition." Motion for Relief from the Automatic Stay at ¶ 6. PennyMac further alleged that Gray had failed to make monthly post-petition mortgage payments (such that the total amount necessary to reinstate the loan post-petition was $16,559.12). Id. at ¶ 7-8. PennyMac sought an order modifying the stay "to proceed with its mortgage foreclosure on the mortgaged premises, and to allow the Sheriff's Grantee to take any legal action to enforce its right to possession of the mortgage premises." Id. at Prayer for Relief. The

3

Bankruptcy Court denied the motion without prejudice, noting at a hearing[2] that PennyMac could not proceed against Gray personally in light of the state court proceedings.

PennyMac then filed a motion for in rem relief from the automatic stay under 11 U.S.C. § 362(d)(4)(B).[3] PennyMac reiterated that the plan did not provide for payments on the mortgage, which had matured on February 1, 2011. PennyMac noted the foreclosure proceedings instituted in 1996, and stated that continuation of "the foreclosure proceedings by reason of non-payment of the monthly mortgage payments were stayed by the filing of a Chapter 13 Petition." Motion for In Rem Relief from the Automatic Stay at ¶ 8-9. PennyMac asserted that Gray had "an extensive bankruptcy filing history along with her spouse T. Barry Gray and co-mortgagor . . . Jackson that [has] prevented PennyMac from proceeding with its state foreclosure action that has been pending for over sixteen (16) years." Id. at ¶ 11. PennyMac interpreted the state court judgment, which found for "defendant, Patricia Gray on complaint," as meaning that Gray was not personally liable for the mortgage but that PennyMac could proceed with its foreclosure action and seek in rem relief for the property." Id. at ¶ 14. PennyMac

---

[2] Neither this hearing nor the hearing on a later motion for relief from the stay was transcribed, but we have obtained, and listened to, the audio recordings.

[3] Section 362(d)(4)(B) allows for relief from the automatic stay against real property for a creditor whose interest is secured by the property "if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such real property."

4

sought relief for all purposes, including, but not limited to proceeding to enforce its remedies to foreclose upon and obtain possession of the property.  Id. at Prayer for Relief.

The Bankruptcy Court held a hearing on February 6, 2013, and noted that Gray had filed numerous bankruptcies involving the property, and that those bankruptcies, "by any measure," constituted an "abuse of the system."  The Bankruptcy Court granted PennyMac in rem relief from the automatic stay, modifying the stay to allow PennyMac to proceed against the property.

Gray appealed to the District Court,[4] which affirmed the Bankruptcy Court's decision.  The District Court rejected her arguments, including, inter alia, that PennyMac did not have standing to move for relief from the automatic stay; that the Bankruptcy Court violated the Rooker-Feldman doctrine; that the Bankruptcy Court erred in determining that she had filed bad faith bankruptcies that had interfered with PennyMac's ability to foreclose on the property; that the Bankruptcy Court violated the doctrine of merger of judgments in foreclosure actions; and that the doctrines of res judicata and collateral estoppel barred the relief PennyMac won.  In ruling, the District Court rejected Gray's arguments that PennyMac sought in rem relief in the state court, concluding that only in personam relief was sought (and denied).

Gray appeals.  Gray argues that the District Court misunderstood the state court proceedings and misinterpreted the Pennsylvania Superior Court's ruling.  She asserts in particular that the state court proceedings were in rem proceedings.  She further argues

---

[4] Gray's appeal from the Bankruptcy Court's order entered on February 7, 2013, was timely.  Although the District Court described Gray's appeal as filed on April 17, 2013 (a date that PennyMac repeats in its brief), that date was the date the appeal was transmitted to the District Court.  She filed her notice of appeal on February 13, 2013.

5

that the District Court's misapprehension of the nature of the state action is at the root of wrong conclusions regarding the application of the doctrines of merger of judgments, res judicata, collateral estoppel, and Rooker-Feldman. Gray seeks reversal of the District Court's order, although she also favors requiring PennyMac to produce the judgment against her sister and allowing PennyMac relief from the automatic stay to pursue its rights under that judgment.

PennyMac argues that the District Court properly rejected Gray's arguments and properly determined that Gray had filed bad faith bankruptcies that had interfered with PennyMac's foreclosing on the property. PennyMac lists the many actions filed by Gray and her husband since the initiation of the foreclosure proceedings in state court, including several bankruptcy filings. PennyMac asserts the bankruptcy filing underlying this action, like its predecessors, "is nothing more than yet another means to delay the foreclosure action that has been pending for 17 years." Appellee's Brief at 8.

We have jurisdiction pursuant to 28 U.S.C. § 158(d). We apply the same standard to review the Bankruptcy Court's decision as did the District Court. Zinchiak v. CIT Small Bus. Lending Corp., 406 F.3d 214, 221 (3d Cir. 2005). We review the Bankruptcy Court's findings of fact for clear error and exercise plenary review over its legal determinations. Id. at 221-22.

Although the parties spend considerable time arguing about the nature of the state court action and the applicability of various doctrines, the primary question is whether 11 U.S.C. § 362(d)(4)(B) applies. As noted above, a bankruptcy court shall grant relief "with respect to a stay of an act against real property under subsection (a), by a creditor

6

whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4)(B).

It is undisputed that Gray has been a party to multiple bankruptcy filings. PennyMac, in its motion, did not list or examine Gray's earlier filings to make its case under the statutory provision it cited. The Bankruptcy Court, at the hearing, referred to 16 bankruptcy filings (although Gray stated on the record that they were not all hers), but did not list them or make any findings about how they related to the North 51st Street property. The District Court mentioned "at least five bankruptcies" but similarly did not make any findings about their effect on the property. Multiple bankruptcy filings do not alone justify relief under 11 U.S.C. § 362(d)(4)(B), however. Under the statute, those filings, as well as the petition in this case, must be "part of a scheme to delay, hinder, or defraud creditors" of the North 51st Street property.

PennyMac does list some specific cases in its brief, and a PACER search pulls up four cases in this circuit in which Patricia R. Gray filed for bankruptcy. Gray filed bankruptcy petitions in March 2005 (E.D. Pa. Bankr. No. 05-bk-13323) and July 2005 (E.D. Pa. Bankr. No. 05-bk-19995); she voluntarily withdrew both petitions within weeks of submitting them. In July 2007, Gray initiated a new bankruptcy case (E.D. Pa. Bankr. No. 07-bk-14137). In that case, a bank and its loan servicing agent moved for relief from the automatic stay to go forward on the sheriff's sale of a property in Folsom, Pennsylvania, alleging that the debtor had filed three bankruptcy petitions to interfere

7

with the foreclosure action relating to that property and that the basis for her claim of ownership of that property was a fraudulent conveyance. On July 20, 2007, the Bankruptcy Court ordered that no automatic stay prohibited the foreclosure proceedings of the Folsom property.

Also, after Gray filed the bankruptcy petition in this matter, VRF REO, LLC, then the record owner of the Folsom property, subsequently moved for relief from the automatic stay to proceed with its ejectment proceeding as to that property. VRF REO, LLC, described the ejectment proceedings and Gray's efforts to obstruct it. VRF REO, LLC, alleged that Gray's (and her husband's) bankruptcy filings and other lawsuits (including quiet title actions) and appeals all served to interfere with foreclosure proceedings instituted in 2001 and the ability of VRF REO, LLC, (and its predecessor) to take possession of the Folsom property. The Bankruptcy Court modified the stay to allow VRF REO, LLC, to proceed with, or resume, proceedings in the state court ejectment or any litigation relating to the Folsom property. Bankr. Ct. Order of June 25, 2011. Gray appealed. The District Court, affirming the ruling, described the years of litigation that followed the 2001 foreclosure action and the 2008 ejectment action, including the Grays's bankruptcy petitions. Gray did not appeal from that decision.

That Gray obstructed actions relating to the Folsom property is objectionable, but it does not support the ruling under § 362(b)(4)(D). The statute requires that the scheme relates to property for which PennyMac is the creditor, not just any real property. PennyMac asserts that Gray has been seeking to hinder and delay a creditor of the North 51st Street property on the basis that "its mortgage foreclosure action [was filed] against

8

Appellant 17 years ago." Appellee's Brief at 17. There is no question that the foreclosure proceedings spanned a long stretch of time. But the 2005 bankruptcy filings, terminated weeks after they were initiated, did not long affect the state foreclosure action. And there is also no question that, at the conclusion of the state proceedings, Gray won. Her 2007 and 2011 filings came after the verdict in her favor.

More specifically, in 2006, Gray won a verdict in her favor after a non-jury trial. Subsequently, after one of Gray's earlier bankruptcy filings, it was one of PennyMac's predecessors that sought a discontinuance of the foreclosure action. Gray moved to strike that motion, and then, when the trial court allowed the discontinuance, took an appeal to the Superior Court. In 2010, the Superior Court ordered that judgment be entered on the verdict in Gray's favor. At the time that Gray filed the bankruptcy action underlying this appeal, judgment had not yet been entered. It was entered, however, shortly thereafter. Although PennyMac asserted in its motion for relief from the automatic stay that the continuation of "the foreclosure proceedings by reason of non-payment of the monthly mortgage payments were stayed by the filing of a Chapter 13 Petition," it is unclear how that could be. Those foreclosure proceedings as to Gray were complete,[5] except for the belated entry of judgment by the trial court, at the inception of Gray's bankruptcy case.

---

[5] PennyMac may believe that it can "continue" the foreclosure proceedings by seeking in rem relief, not in personam relief. PennyMac, as well as the District Court, seems to labor under the assumption that the foreclosure proceedings established only that Gray was not personally liable for the mortgage (the Bankruptcy Court also discusses Gray's lack of personal liability at the hearing). The District Court goes so far as to say that no request for in rem relief was ever made in state court (rejecting Gray's argument to the contrary). However, it is wrong to categorize what Gray won as a judgment relating to in personam relief. The Superior Court ordered the trial court to enter judgment in Gray's favor on the foreclosure complaint. A foreclosure complaint under Pennsylvania law is an in rem proceeding. See Signal Consumer Discs. Co. v. Babuscio, 390 A.2d 266, 269-70 (Pa. Super. Ct. 1978). The foreclosure complaint in Gray's action sought the entry of a judgment for the sale of the property, in the sum of the amount in default plus interest and fees. It is a question of state law whether the demand for the amount was an

9

There is the question whether Gray's filings were part of a scheme meant to interfere with PennyMac's efforts in the foreclosure proceedings as they related to Gray's sister.[6] Although the issue has not been developed, it was mentioned at one of the bankruptcy hearings that Gray's sister, Jackson, the other record owner of the property, also has filed for bankruptcy protection several times. If Gray's filing were part of a scheme undertaken with Jackson to defraud PennyMac, then relief from the automatic stay would be appropriate under § 362(b)(4)(D). Cf. In re Kinney, 51 B.R. 840, 845-46 (C.D. Cal. Bankr. 1985) (considering eight bankruptcies filed by five different adult members of a family to thwart efforts to foreclose on a jointly owned property as a "scheme" of bad faith acts by one entity). However, it is unclear from the record whether it was.[7] At the hearing and in her papers, Gray invites PennyMac to pursue its judgment

---

inartful attempt to comply with pleading requirements for foreclosure actions or an attempt to include a request for in personam judgment with the foreclosure. See Insilco Corp. v. Rayburn, 543 A.2d 120, 123-25 (Pa. Super. Ct. 1988). Whatever it was (and whether the Superior Court's ruling that Gray was not liable also referred to in personam relief), the demand did not change the fact that PennyMac's predecessor-in-interest sought an in rem remedy by filing for foreclosure. That it failed in its efforts, apparently because of the lack of proper notice of the foreclosure to Gray, may not bar PennyMac from trying again in accordance with state law if there is a new default, pre- or post-petition. Also, the verdict in Gray's favor may not bar PennyMac from obtaining that sale by enforcing its judgment as to Jackson, either. But those questions are not before us. Our focus is on whether PennyMac met the requirements for relief under the particular statutory requirements of 11 U.S.C. § 362(b)(4)(D).

[6] In relation to this question and otherwise, we note that Gray did not list the property or provide for payments in her plan.

[7] PennyMac refers to Gray's husband's bankruptcy filings. However, as he was not an owner of record of the North 51st Street property, it is also unclear on the current record how his filings could have affected PennyMac's (or its predecessors') efforts to foreclose on the property.

10

against Jackson. PennyMac has not presented evidence about Jackson's role (or Gray's efforts in relation to Jackson's activities), if any, and the Bankruptcy Court did not explore this issue.[8]

If it is true, as was mentioned at a hearing, that no one has ever paid the mortgage on the North 51st Street property, we do not disagree with the Bankruptcy Court that this is a "ludicrous" situation.[9] However, on the peculiar facts of this case and the particular record before us, we cannot say that PennyMac provided, or the Bankruptcy Court had, evidence that Gray's filing "was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting [the North 51st Street property]." 11 U.S.C. § 362(d)(4)(B). We are in no way saying that PennyMac is barred from again applying for relief under this statutory provision and making the proper showing. We are also not saying that PennyMac cannot seek relief from the automatic stay under another

---

[8] We have limited information about Jackson, specifically, her name and the North 51st Street address, which may or may not be her current address. She used that address in a 1991 bankruptcy filing (E.D. Pa. Bankr. No. 91-bk-10168), which preceded the foreclosure proceedings. Through our search of judicial records on PACER, we see she has used a different address, too, in later filings. In one of Jackson's bankruptcy cases (E.D. Pa. Bankr. No. 09-bk-13559), the Bankruptcy Court granted a different creditor's motion to compel the trustee to abandon the North 51st Street property as part of the estate so that the creditor could repossess it. Also related to that action, Gray filed an adversary complaint against Jackson relating to disputes over the property, and sought relief from the automatic stay to proceed against her sister and occupants of the property in state court actions.

[9] We note, however, that only one foreclosure proceeding was initiated. The state court apparently ruled that it was not initiated properly as to Gray. As the note passed from one company to another, it appears that no other company filed another action against her. It is unclear what efforts have been taken to recover on the judgment against Jackson.

11

statutory provision.[10]  We must conclude, however, that the Bankruptcy Court erred in

granting relief under § 362(d)(4)(B) on the current record in this unusual case.  For this

reason, we must vacate the District Court's decision affirming the Bankruptcy Court's

order.  This matter is remanded to the District Court for further proceedings consistent

with this opinion, including the vacating of the Bankruptcy Court's order granting

PennyMac relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4)(B).

---

[10] For example, PennyMac may be able to make a showing that it is entitled to relief from automatic stay for cause under 11 U.S.C. § 362(d)(1).  We are aware that PennyMac initially moved for relief under this provision, and that the Bankruptcy Court denied the motion after a hearing in which the procedural history of the state court action came to light.  That denial, however, was without prejudice to a renewed motion.

12