J-A16020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WACHOVIA BANK, N.A. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| COLIN CUMMING AND BENNU REALTY GROUP, LLC | |
| APPEAL OF: COLIN CUMMING | No. 2861 EDA 2014 |

Appeal from the Order Entered January 25, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): December Term, 2008 No. 004646

BEFORE: LAZARUS, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 07, 2015**

Appellant, Colin Cummings, appeals from the trial court order entered on January 25, 2013, granting a motion for summary judgment filed by Wachovia Bank, N.A. (Wachovia)[1] and dismissing Appellant's counterclaims without prejudice. Upon review, we vacate and remand for trial.

The trial court set forth the facts and procedural history of this case as follows:

> This matter originated out of a loan for $252,781.50 from []
> Wachovia to Lloyd Blagrove on January 10, 2007. Mr.
> Blagrove is the managing member of co-defendant, Bennu

---

[1] Wells Fargo Bank, N.A., is the successor by merger to Wachovia. Wells Fargo filed a brief in opposition to Appellant's appeal. However, for clarity and consistency, we will refer to Appellee as Wachovia throughout this memorandum.

*Retired Senior Judge assigned to the Superior Court.

Realty.[2]  The loan was evidenced by a promissory note, and secured by the real property located at 445 Olive Street, in Philadelphia ("property").  The loan proceeds were used by Bennu Realty to buy the property from [Appellant].  The mortgage document listed [Appellant] as the "grantor" and the "mortgagor."   Mr. Blagrove was listed as the "borrower" and Wachovia was the mortgagee "lender."

[Appellant] executed the mortgage document on the property to secure the loan.  However, the deed transferring the property to Bennu Realty was never filed of record.  [Wachovia] never sought payment on the loan from [Appellant].  Bennu Realty defaulted on the loan after one year, and [Wachovia] filed [a] mortgage foreclosure action in December 2008.  [Wachovia] named as defendants both Bennu [Realty] and [Appellant].  Bennu [Realty] did not file an answer to the complaint.  [Appellant] filed an answer, new matter, cross-claims and counterclaims.  [Wachovia] contended that [Appellant] was a necessary party in the foreclosure action because he remained the owner of the property, the deed to Bennu [Realty] having never been recorded.  [Wachovia] attempted to work with [Appellant] by suggesting he transfer the property to Bennu [Realty] by quitclaim deed, but [Appellant] declined. [Wachovia] filed a separate action to quiet title.   On January 6, 2012 [Wachovia] obtained a default judgment in the quiet title action and Bennu Realty was deemed to be the real owner of the property *nunc pro tunc* to the sale date of January 10, 2007.  In that same action [Wachovia] was granted an equitable mortgage lien against the property under the same terms and conditions [under] the original mortgage document.   After title to the property was quieted by a judgment entered in the quiet title action, [Wachovia] discontinued this foreclosure action against both [Appellant and Bennu Realty].   [Appellant] did not discontinue his counterclaims against [Wachovia]; nor did he discontinue his cross-claims against Bennu [Realty].   [Wachovia] filed for summary judgment on the counterclaims, which [the trial court] granted without prejudice on January 25, 2013.  [Appellant] appealed [].   On March 7, 2014, [this Court]

---

2   Bennu Realty is not a party to this appeal.

quashed the appeal and the case was remanded to the trial court because [Appellant's] cross-claims against Bennu [Realty] were still pending.

Thereafter this matter was scheduled for trial and a bench trial was held before the Honorable Alice Beck Dubow on September 15, 2014 resulting in a finding in favor of [Appellant] and against Bennu [Realty] in the amount of $80,536.01. Neither post[-]trial motions nor an appeal was filed. [Appellant] now appeals [the trial court's] January 25, 2013 order which dismissed [Appellant's] counterclaims [against Wachovia].

Trial Court Opinion, 2/3/2014, at 1-3 (superfluous capitalization omitted; page numbers supplied).

On appeal, Appellant presents the following issues for our review:

1. Did the trial court commit an error of law and/or abuse[] its discretion by dismissing [Appellant's] counterclaims because [Appellant's] counterclaims are part of or incident to the creation of the mortgage, specifically, fraud in the inducement of the mortgage?

2. Did the trial court commit an error of law and/or abuse[] its discretion by granting a motion for summary judgment when there was undisputed evidence of fraud committed by Wachovia []?

3. Did the trial court commit an error of law and/or abuse[] its discretion by granting a motion for summary judgment wherein there was evidence of negligence committed by Wachovia []?

4. Did the trial court commit an error of law and/or abuse[] its discretion by granting a motion for summary judgment wherein there was evidence of violations of banking laws committed by Wachovia []?

5. Did the trial court commit an error of law and/or abuse[] its discretion by granting [Wachovia's] motion for summary judgment to [Appellant's] counterclaims, because although the court dismissed the counterclaims without prejudice, [Appellant] does not have a

- 3 -

jurisdiction to refile his claims as the statute of limitations may preclude all or some of his counterclaims?

6. Did the trial court commit an error of law and/or abuse[] its discretion by granting a motion for summary judgment that was not ripe as discovery was ongoing?

Appellant's Brief at 5-6 (superfluous capitalization and suggested answers omitted).

In all of his issues presented on appeal, Appellant contends that the trial court abused its discretion by granting summary judgment in Wachovia's favor and dismissing his counterclaims to the mortgage foreclosure action. We will examine the contentions together. First, Appellant argues, as a matter of law, that a borrower may assert a valid counterclaim within the context of a mortgage foreclosure action alleging that execution of the mortgage at issue was fraudulently induced *Id.* at 13. Appellant claims "he produced evidence of a fraud as Wachovia created a mortgage he did not even know about." *Id.* at 15. More specifically, he claims "[t]he buyer [of the property at issue], Bennu Realty, LLC, in conjunction with Wachovia Bank's employee, Dana Vernon, utilized [Appellant's] good credit and real estate, to purchase the Olive Street property" and "Bennu Realty obtained in effect an unsecured loan, and Dana Vernon and Wachovia Bank profited from [that] loan." *Id.* at 16. As a result, Appellant maintains he lost income from residential rentals, after losing his business privilege license, and he has incurred legal fees due to

the foreclosure action. *Id.* at 15. He also claims he still is listed as the mortgagor and receives real estate bills from the Philadelphia school district, as well as utility bills for the property. *Id.* at 22.

Next, Appellant asserts:

> If not fraudulent and intentional, it was negligent that Wachovia's employees prepared a mortgage for [Appellant's] signature, that was filed in the public records, when not only didn't he apply for a mortgage, he was the [s]eller of the home and signed a deed transferring ownership on the same day as the mortgage was signed. Moreover, if not fraudulent and intentional, it was negligent for Wachovia to file the mortgage with the Recorder of Deeds and to not file the deed signed by [Appellant] transferring the property. As such, the public record and internal documents of Wachovia appeared to demonstrate a home improvement loan was taken by [Appellant], rather than what actually occurred, the sale of the home from [Appellant] to Bennu Realty Group, LLC.

*Id.* at 20. In further support of his claim that he did not enter into a mortgage, Appellant posits that Wachovia did not send him residential mortgage debtor disclosures as required under the Truth in Lending Act and the Real Estate Settlement Procedures Act. *Id.* at 21. Appellant claims summary judgment was premature because discovery deadlines were not established and Appellant requested depositions of key witnesses. *Id.* at 24. Finally, Appellant argues that when the trial court dismissed his counterclaims without prejudice it acknowledged valid claims but suggested there was a more appropriate venue or jurisdiction. *Id.* at 25-28. Appellant argues that he is without recourse on some claims, however, because the applicable statute of limitations may have already expired. *Id.* at 25.

We begin with our standard of review:

> [O]ur standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. Our scope of review is plenary. In reviewing a trial court's grant of summary judgment, we apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.
>
> *      *      *
>
> Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. ***Petrina v. Allied Glove Corp.***, 46 A.3d 795, 797–798 (Pa. Super. 2012) (internal citations omitted).

Rule of Civil Procedure 1035 governs motions for summary judgment and provides, in relevant part, as follows:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1)  whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. This Court has explained the application of this rule as follows:

> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of a cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

*Petrina*, 46 A.3d at 798.

***Criswell v. Atl. Richfield Co.***, 115 A.3d 906, 908-909 (Pa. Super. 2015).

Initially, we note that the trial court in this case granted summary judgment on a procedural consideration which it raised *sua sponte*. Specifically, the trial court dismissed Appellant's counterclaims because it determined that the counterclaims did not arise from the same transaction

- 7 -

or occurrence as Wachovia's mortgage foreclosure claims. We also note that Wachovia never raises this contention in its responsive submissions. We first examine whether the trial court properly entered summary judgment based upon an issue it raised *sua sponte*. Then, we must determine whether Appellant properly asserted his counterclaims within the scope of Wachovia's mortgage foreclosure action.

Our Supreme Court has declared:

> [G]ranting summary judgment on an issue raised *sua sponte* is inappropriate. This principle is well established in the Superior and Commonwealth Courts. **See**, **e.g.**, **MacGregor v. Mediq, Inc.**, 576 A.2d 1123 (Pa. Super. 1990); **Wojciechowski v. Murray**, 497 A.2d 1342 (Pa. Super. 1985); **O'Hare v. County of Northampton**, 782 A.2d 7 (Pa. Cmwlth. 2001); **Travers v. Cameron County School District**, 544 A.2d 547 (Pa. Cmwlth. 1988). These cases are grounded in a concern that trial courts should not "act as the defendant's advocate." **O'Hare**, at 15. For a trial court to raise an argument in favor of summary judgment *sua sponte* and grant summary judgment thereon risks depriving the court the benefit of advocacy on the issue, and depriving the parties the opportunity to be heard. **See Luitweiler v. Northchester Corp.,** 319 A.2d 899, 901 n. 5 (Pa. 1974) (holding it inappropriate for trial court to raise failure to state claim upon which relief may be granted *sua sponte*).

**Yount v. Pennsylvania Dep't of Corr.**, 966 A.2d 1115, 1119 (Pa. 2009). Thus, it was improper for the trial court to grant Wachovia's motion for summary judgment on an issue it raised *sua sponte*. Moreover, as discussed below, the trial court committed an error of law in doing so.

Regarding counterclaims, Pennsylvania Rule of Civil Procedure 1148 provides:

- 8 -

> A defendant may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose.

Pa.R.C.P. 1148.

This Court has previously determined:

> Rule 1148 restricts every defendant to claims which arise from the same transaction or occurrence from which the plaintiff's cause of action arose.... No defendant may now set off a claim against the plaintiff simply because its nature is contractual or quasicontractual, as allowed in assumpsit actions.

> The claim must now arise, in some manner, from the mortgage relationship.

**Overly v. Kass**, 554 A.2d 970, 973 (Pa. Super. 1989) (internal citation and brackets omitted). "Thus, our task is to determine whether the facts alleged in the [Appellant's] counterclaim are 'part of, or incident to, the creation of' the mortgage itself." **Id.** "This [rule of law] has been held to prevent a counterclaim for fraud in the inducement of a contract of sale of property, but allows a claim for fraud in the inducement of the mortgage itself."[3]

---

[3] Wachovia contends that "*in personam* claims – like [Appellant's] are prohibited from being sought in an *in rem* foreclosure action." Appellee's Brief at 17. Likewise, the trial court briefly mentions that "[t]he action at issue herein is an *in rem* foreclosure on [p]roperty." Trial Court Opinion, 12/2/2014, at 4 (unpaginated). Generally, a mortgage foreclosure action may not include an *in personam* action to enforce a debtor's personal liability. **See Newtown Village Partnership v. Kimmel**, 621 A.2d 1036 (Pa. Super. 1993). "The very definition of a mortgage foreclosure action under [Pa.R.C.P.] 1141(a) excludes 'an action to enforce a personal liability'; this restriction is essential to preserve the 'de terris' identity of a mortgage
*(Footnote Continued Next Page)*

*Green Tree Consumer Disc. Co. v. Newton*, 909 A.2d 811, 814 (Pa. Super. 2006), *citing* **Cunningham v. McWilliams***,* 714 A.2d 1054, 1057 (Pa. Super. 1998) ("[A] counterclaim in a foreclosure action is cognizable if it alleges fraud in the inducement to the mortgage, but not if it alleges fraud in the inducement to the contract of sale.").

This Court's analysis in **Overly** is instructive. In that case, the Overlys agreed to sell their farm to the Kasses and the parties executed a mortgage note. When the Kasses failed to make payment, the Overlys filed a complaint against them. The Kasses filed a counterclaim claiming the Overlys intentionally withheld information regarding defects to the property and they were entitled to a set-off. More specifically:

> The Kasses allege[d], *inter alia,* that the Overlys made numerous misrepresentations regarding the condition of the premises prior to sale. [] [T]he Kasses wish[ed] to receive a set-off against the mortgage obligation by setting forth allegations of oral representations. More specifically, the representations include[d] that a rusted trailer, a rusted and inoperable truck and a dilapidated lean-to would be removed from the property by the Overlys; that the Kasses would be entitled to about $14,000.00 in consideration of the continued use of their property by the Peoples Natural Gas Company; and that certain crop subsidies would be immediately available to them from the government for

*(Footnote Continued)* —————————

foreclosure action and is equally binding on a mortgagee-plaintiff and a mortgagor-defendant." *Signal Consumer Disc. Co. v. Babuscio*, 390 A.2d 266, 270 (Pa. Super. 1978). "**Rule 1148**, which allows a defendant to assert a contractual counterclaim arising out of a mortgage transaction against the mortgagee, **constitutes the only exception to this rule**." *Id.* (emphasis added). Thus, we reject Wachovia's claim that Appellant's counterclaims are barred because the claims implicate *in personam* relief.

- 10 -

growing certain types of crops. These alleged representations concern[ed] the agreement of sale, however, and [were] not part of, or incident to, the creation of the mortgage.

The mortgage is an interest in the mortgaged property created by a written agreement providing security for the payment of a debt or an obligation. None of the facts alleged by the Kasses deal[t] even remotely with the creation of that security interest; rather, they deal[t] with the agreement between the buyers and the sellers of the property. Accordingly, the Kasses' counterclaim [did] not arise as part of, or incident to, the creation of the mortgage.

*Overly*, 554 A.2d at 973-974 (footnote omitted).

By contrast, in this case, Appellant's counterclaims allege fraud (or, alternatively, negligence) in the creation of the mortgage instrument and the mortgagor/mortgagee relationship. Appellant claims that at the closing for the sale of his property, Wachovia fraudulently (or negligently) obtained his signature and filed a mortgage in his name. He further avers that Wachovia filed that mortgage, but did not file the original deed and, thus, Appellant remained the record owner of the property. These allegations all relate directly to the creation of the mortgage itself. Thus, we reject Wachovia's suggestion that Appellant's "[c]ounterclaims are based solely on the alleged conduct of [the bank] naming him as a defendant in the foreclosure action, which action occurred almost two years after the creation of the mortgage." Appellee's Brief at 16. Finally, Appellant alleges that despite Wachovia's notice and awareness of the errors, Wachovia still instituted a mortgage foreclosure action against him. Certainly, Appellant contests being named in the foreclosure action. However, he has consistently maintained that it was

- 11 -

the wrongful creation of the mortgage, unknown to him at the time of its execution, which, in turn, led to the mortgage foreclosure and his eventual damages. As such, Appellant's counterclaims were permissible in this mortgage foreclosure action and summary judgment was not appropriate.

Order vacated. Case remanded for trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/7/2015