**IN RE: Linda Jane FORD, Debtor(s).**

**C/A No. 14–03138–JW**

United States Bankruptcy Court,
D. South Carolina.

Signed October 29, 2014

Ann U. Bell, Drose Law Firm, Charleston, SC, R. Michael Drose, North Charleston, SC, for Debtor(s).

Nikole D. Haltiwanger, Rogers Townsend & Thomas, PC, T. Lowndes Pope, Riley Pope And Laney LLC, Columbia, SC, for Midwest First Financial Limited Partnership IV.

Chapter 13

**ORDER**

This matter comes before the Court on the Motion for Relief from Automatic Stay filed by Midwest First Financial Limited Partnership IV ("Midwest"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.[1]

---

1. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

### FINDINGS OF FACT

1. On May 27, 1999, Linda Jane Ford ("Debtor") entered into a promissory note ("Note") with Saxon Mortgage, Incorporated, Midwest's predecessor in interest, to purchase real property located at 167 Neland Court, Walterboro, South Carolina 29488 ("Property"). On the same day, Debtor executed a mortgage in favor of Saxon Mortgage, Incorporated as to the Property in the amount of $68,000.00 ("Mortgage").

2. The Mortgage contained an acceleration clause allowing the Note's holder to demand full payment upon an event of default. The Mortgage also included a rider outlining the time at which the remaining balance on the Note would become due and payable if not already satisfied by previous payments ("Balloon Payment"). The Balloon Payment was scheduled to become due on June 1, 2014; at the time Debtor filed her current bankruptcy case on May 30, 2014, the Note's remaining balance was approximately $77,102.00.

3. Prior to filing the instant case, Debtor voluntarily filed three separate Chapter 13 bankruptcy cases.

4. Debtor's first case, # 99–07529–WB, was filed on September 3, 1999 ("First Case"). Debtor's Chapter 13 plan was filed on September 21, 1999 and confirmed without objection on November 4, 1999. Under her confirmed plan, Debtor was required to make payments of $73.00 per month, plus 8.25% interest, to cure an arrearage on the Mortgage as held by Midwest's predecessor in interest, Meritech Mortgage, with regular payments to be paid directly by Debtor beginning in October 1999.[2] Midwest filed a motion for relief from stay on August 31, 2000 based on Debtor's failure to make regular postpetition Mortgage payments outside of her confirmed plan from November 1999 through August 2000. Midwest's motion was resolved by a settlement order on September 22, 2000 which provided Debtor the opportunity to cure the arrearage.[3] On November 30, 2000, Midwest filed an affidavit of Debtor's default under the settlement order and Midwest's motion for relief from stay was subsequently granted on December 4, 2000. Shortly thereafter, on February 2, 2001, Debtor's First Case was dismissed upon the Court's granting of the Trustee's Petition to Dismiss for Non–Payment. The Trustee's final report and account in the First Case indicates that Debtor paid $3,024.00 into the case prior to dismissal, with Midwest receiving $747.09 of its allowed claim of $2,550.67.

5. Debtor's second case, # 01–04424–JW, was filed on April 30, 2001 ("Second Case"). Debtor's Chapter 13 plan was filed on May 15, 2001 and confirmed without objection on July 20, 2001. Under her confirmed plan, Debtor was required to make payments of $271.00 or more per month, without interest, to Midwest to cure an arrearage on the Mortgage through May 2001, with regular payments to be paid directly by Debtor beginning in

---

**2.** Debtor's plan in the First Case also required payments to: (1) the Trustee of $296.00 per month for fifty-seven (57) months; (2) her attorney for fees at a rate of 10% of the monthly payments to creditors; (3) secured creditor Transouth of $174.00 per month plus 8.25% interest until its allowed claim of $8,150.00 was paid in full; and (4) unsecured creditors in the amount of 5% of their allowed claims, on a pro-rata basis.

**3.** Midwest became the holder of the Note and Mortgage post-petition. A review of the record in Debtor's First Case shows that her initial failure to make payments directly to Midwest outside of her confirmed plan was apparently attributable to confusion as to the ownership of the Note and Mortgage.

June 2001.[4] Debtor's plan was amended on December 31, 2001 with adjustments to Debtor's payments to the Trustee,[5] but without altering its treatment of Midwest. Debtor's amended Chapter 13 plan was confirmed without objection on February 11, 2002. Midwest filed a motion for relief from stay on November 1, 2002 based on Debtor's failure to make post-petition Mortgage payments directly to the creditor for and after August 2002. Midwest's motion was resolved by a settlement order on November 21, 2002, which provided Debtor with the opportunity to cure the arrearage. On February 20, 2006, after over three years of Debtor's compliance with the terms of the November 2002 order, Midwest filed an affidavit of Debtor's default under the settlement order. Midwest's motion for relief from stay was subsequently granted on February 22, 2006. Shortly thereafter, upon Debtor's successful completion of her amended plan, this Court entered an order granting discharge on March 3, 2006. The Trustee's final report and account in the Second Case indicates that Debtor paid $19,707.50 into the case prior to discharge, with Midwest receiving $16,730.26 of its allowed claim of $17,264.20.

6. Over two years after Debtor's successful completion of her Second Case, Debtor failed to make her July 2008 Mortgage payment, which was an event of default under the terms of the Mortgage. Enforcing the aforementioned acceleration clause, Midwest declared the unpaid principal balance of the Note, all unpaid accrued interest, and all other indebtedness or charges secured or to be secured by the Mortgage immediately due and payable.

7. Debtor was unable to pay the full balance of the Note and other charges, and Midwest initiated a foreclosure lawsuit on July 30, 2009. On October 22, 2009, a Special Referee's Judgment of Foreclosure and Sale was entered ordering the Property to be sold at a judicial sale ("Sale Order") and a sale date was set for December 7, 2009.

8. After the entry of the Sale Order, Debtor's third case, # 09–07940–JW, was filed on October 23, 2009 ("Third Case"). Debtor's amended Chapter 13 plan filed on December 11, 2009 was confirmed without objection on January 13, 2010.[6] Under her confirmed plan, Debtor was required to make payments of $245.00 or more per month, without interest, to Midwest to cure an arrearage on the Mortgage through November 2009, with regular payments to be paid directly by Debtor beginning in December 2009.[7] Midwest filed its first motion for relief from stay in the

---

4. Debtor's plan in the Second Case also required payments to: (1) the Trustee of $310.00 per month for fifty-seven (57) months; (2) her attorney for fees at a rate of 25% of the monthly payments to creditors; and (3) general unsecured creditors in the amount of 1% of their allowed claims, on a pro-rata basis.

5. Debtor's amended plan in the Second Case mirrored her initial plan except that the Trustee under the amended plan was to be paid $310.00 per month for seven months and $335.00 per month for the remaining fifty (50) months of the plan.

6. Debtor filed amended versions of her Chapter 13 plan on several occasions prior to confirmation.

7. Debtor's plan in the Third Case also required payments to: (1) the Trustee of $480.00 per month for two months, followed by payments of $525.00 per month for fifty-eight (58) months; (2) her attorney for fees of $3,000.00, $900.00 of which was paid by Debtor at the start of the case; and (3) Consumer Portfolio Services, the holder of an allowed secured claim relating to Debtor's vehicle, in the amount of $148.00 or more per month, plus 5.25% interest, until its claim was paid in full.

Third Case on October 8, 2010 based on Debtor's failure to make post-petition Mortgage payments directly to the creditor for and after July 2010. Midwest's motion was resolved by a settlement order on October 26, 2010 which provided Debtor with the opportunity to cure the arrearage. Midwest filed its second motion for relief from stay on February 9, 2013 based on Debtor's failure to make post-petition Mortgage payments directly to the creditor for and after September 2012. Midwest's second motion was resolved by settlement order on March 5, 2013, thereby allowing Debtor to cure the arrearage. The Trustee filed a petition to dismiss Debtor's Third Case for non-payment on April 3, 2013. Shortly thereafter, Debtor filed an amended Chapter 13 plan on April 23, 2013 with adjustments to Debtor's payments to the Trustee,[8] but without altering its treatment of Midwest. Debtor's amended Chapter 13 plan was confirmed without objection on May 29, 2013. Prior to confirmation, the Trustee's petition to dismiss was resolved by consent order on May 1, 2013.[9] Later, on October 15, 2013, this Court granted a motion by the Trustee for dismissal of Debtor's Third Case for non-compliance. The Trustee's final report and account in the Third Case indicates that Debtor paid $23,381.40 into the case prior to dismissal, with Midwest receiving $11,575.93 of its allowed claim of $15,293.78.

9. Following the dismissal of Debtor's Third Case, Midwest obtained a Supplemental Special Referee's Judgment of Foreclosure and Sale following a hearing on its previously stayed proceedings against the Property. A second Sale Order was entered on April 2, 2014 with the sale of the Property scheduled for June 2, 2014.

10. Debtor's current case was filed on May 30, 2014 in light of the impending foreclosure sale of the Property as well as Debtor's inability to pay the Balloon Payment due on June 1, 2014. Along with her petition, Debtor filed her schedules, statements, motion to extend the automatic stay pursuant to 11 U.S.C. § 362(c)(3), and Chapter 13 plan. Debtor's motion to extend the stay and Chapter 13 plan were both properly served upon Midwest and included notice of the relevant deadlines for objections.

11. The deadline for objections to Debtor's motion to extend the automatic stay was set as June 13, 2014. Debtor's Chapter 13 plan stated June 27, 2014 as its deadline for objections to confirmation— twenty-eight (28) days from the date of service of the plan on interested parties. Midwest did not file an objection to Debtor's motion or her proposed Chapter 13 plan.

12. In support of her motion to extend the automatic stay pursuant to 11 U.S.C. § 362(c)(3), Debtor submitted an affidavit which demonstrated a change of circumstance since the filing of her Third Case. Based on Debtor's affidavit and a review of the record, the Chapter 13 Trustee consented to the extension of the stay. Despite notice, there were no objections filed by any other party in interest, including Midwest, and the Court granted the motion on June 18, 2014, conditioned upon any future dismissal being with prejudice as to future filings under Chapters 11, 12, and 13.

---

8. Debtor's amended plan in the Second Case mirrored her initial plan except that the Trustee under the amended plan was to be paid $480.00 per month for two months, followed by payments of $525.00 per month for thirty-nine (39) months and $550.00 per month for nineteen (19) months.

9. The Consent Order Resolving Trustee's Petition to Dismiss was amended on May 8, 2013.

13. After being properly served with Debtor's proposed Chapter 13 plan, Midwest did not object to its confirmation. Debtor's plan was confirmed on July 3, 2014 ("Plan"), with Court records showing service of the confirmation order on Midwest. Midwest did not appeal the confirmation order. The Plan provides for full payment of Midwest's allowed secured claim of $78,642.00,[10] with monthly payments to Midwest through the Trustee of $1,463.00, plus 5.25% interest.[11] Ultimately, Debtor's successful completion of the Plan will result in Midwest receiving over $85,000.00.

14. On July 2, 2014, Midwest filed its Motion for Relief from Stay ("Motion") asserting that it is entitled to relief under 11 U.S.C. § 362(d)(1), (2), and/or (4). Midwest argues that there is cause for relief from stay and additional *in rem* relief due to (1) lack of good faith in Debtor's filing of at least two of her bankruptcy cases; (2) an absence of equity in the Property, which Midwest claims makes the Property unnecessary for an effective reorganization; and (3) evidence that Debtor has engaged in a scheme designed to delay collection of a debt by Midwest. Midwest's Motion does not cite any post-petition conduct by Debtor as grounds for relief and references only two of Debtor's filings—the Third Case, in which Debtor made payments for four years prior to its dismissal, and the instant case.

15. Debtor filed an objection to the Motion on July 8, 2014, asserting that her instant case, as well as each of her previous Chapter 13 cases, was filed in good faith and not as a part of any scheme to delay collection by Midwest, but rather in an attempt to preserve the Property. Debtor does not contest Midwest's claim that there is no equity in the Property; Debtor's schedules reflect the Property's tax assessed value of $67,200.00, which is the same amount cited by Midwest in its Motion. However, Debtor asserts that the Property, as her primary residence, is necessary to an effective reorganization and argues that the absence of equity, without more, is insufficient to prove otherwise.

16. On August 20, 2014, a hearing was held on the Motion. Debtor's testimony at the hearing reflected the following facts:

a. Prior to the instant case, Debtor filed three bankruptcy cases and in each case, Midwest received payments as a creditor through a confirmed Chapter 13 plan;

b. The improvement to Debtor's financial situation subsequent to her Third Case is attributable to a reduction in childcare and vehicle expenses and increase in her monthly income through receipt of additional retirement income;

c. In between the dismissal of the Third Case and the instant case, Debtor made multiple attempts outside of bankruptcy to work out her indebtedness to Midwest, including seeking a mortgage modification;

d. Debtor filed the instant case to save the Property, her primary residence, through a restructuring of her debt to Midwest that would involve manageable monthly payments

---

**10.** On September 18, 2014, Midwest filed proof of its secured claim in the amount of $78,642.00, citing the remaining balance on the Note and Mortgage as its basis for claim.

**11.** Debtor's Plan also requires payments to: (1) the Trustee of $1,665.00 per month for

sixty (60) months, from which Midwest's will receive its payment under the Plan; and (2) her attorney for fees of $3,500.00, $1,500.00 of which was paid by Debtor at the start of the case.

rather than the single, lump sum Balloon Payment;

e. Debtor has no equity in the Property, which continues to serve as her primary residence;

f. There is no evidence of post-petition conduct by Debtor that would indicate a default on her obligations under the Plan to Midwest, the Trustee, or any other interested party; and

g. In her previous cases and in the instant case, Debtor has continued to pay down the debt owed to Midwest in relation to the Property.

17. Midwest does not dispute that Debtor made efforts to work out her indebtedness subsequent to her Third Case. At the hearing, aside from confirming through cross-examination that Debtor had filed more than one case, Midwest offered no other evidence to support its motion.

### CONCLUSIONS OF LAW

Midwest seeks relief from stay for cause under 11 U.S.C. § 362(d)(1) [12] on the grounds that Debtor filed the instant bankruptcy case in bad faith; under § 362(d)(2) on the grounds that the Property, in which Debtor has no equity, is not necessary for an effective reorganization; and under § 362(d)(4) on the grounds that Debtor's current bankruptcy case and her Third Case were filed as part of a scheme to delay, hinder, or defraud Midwest. Additionally, Midwest requests *in rem* relief on the grounds that such relief is necessary to prevent abuse of process by Debtor or other parties with an interest in the Property.

### I. Midwest Asserts it is Entitled to Relief from Stay Pursuant to § 362(d)(1), (2), and (4)

Section 362(d) sets forth the grounds on which a party may obtain relief from the automatic stay. Midwest argues that it is entitled to relief from stay under § 362(d)(1), (2), and/or (4). These subsections provide, in pertinent part, that:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [§ 362(a)], such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under [§ 362(a)], if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization; ...

(4) with respect to a stay of an act against real property under [§ 362(a)], by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such real property.

§ 362(a)(1)–(2), (4) (2010).

Midwest bears the burden of proof on the issue of Debtor's equity in the Property.

12. Further reference to the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) shall be by section number only.

See § 362(g) (2010). The parties agree that Debtor has no equity in the Property. Debtor, as "the party opposing such relief[,] has the burden of proof on all other issues." § 362(g)(2) (2010).

### a. Whether Debtor, in opposing Midwest's Motion, has shown an absence of "cause" for relief from stay pursuant to § 362(d)(1)

Midwest asserts that pursuant to § 362(d)(1), the Court should find that in light of Debtor's previous bankruptcy cases, her current case was not filed in good faith, thereby constituting "cause" sufficient to warrant relief from stay. As evidence of bad faith, Midwest points to the timing of the filing of Debtor's Third Case and the current case, which occurred in close proximity to scheduled foreclosure sales of the Property and thereby delayed Midwest's recovery of the Property as collateral for its secured claim. In opposition to the Motion, Debtor argues that her prior cases and the instant case have provided payment to Midwest in relation to the Mortgage and that a change in circumstances since the dismissal of her Third Case will allow her to complete this case and pay Midwest's allowed secured claim in full. Further, Debtor argues that the evidence of the timing of her filing of the Third Case and her current case relative to the timing of scheduled foreclosure sales is insufficient, without more, to indicate bad faith. In addition to her testimony as set forth above, Debtor points to Midwest's failure to object to confirmation of Debtor's Plan and the binding effects of confirmation. Also, Debtor argues that the Court previously determined that Debtor's petition was filed in good faith in the Court's prior rulings extending the automatic stay and confirming Debtor's Plan. See §§ 362(c)(3)(C), 1325(a)(3) & (7) (2010).

■■■ Proof of a debtor's bad faith may serve as grounds for cause sufficient to warrant relief from stay. See In re Henderson, 395 B.R. 893, 899 (Bankr. D.S.C.2008) ("Cause to lift the automatic stay includes lack of adequate protection or any other grounds for cause, including bad faith."). The Court has broad discretion in determining whether cause exists under § 362(d)(1), including on the grounds of bad faith, and must make such determinations on a case-by-case basis, considering the totality of the circumstances. In re Lee, 428 B.R. 667, 669–70 (Bankr.D.S.C.2009); see also Claughton v. Mixson, 33 F.3d 4, 5 (4th Cir.1994). In the context of dismissal of a case, "[m]ultiple or repeated bankruptcy filings do not constitute per se bad faith, however a debtor's history of filings and dismissals may be evidence of bad faith." In re Brown, 319 B.R. 691, 693 (Bankr.M.D.Ala.2005) (citing In re McCoy, 237 B.R. 419, 422 (Bankr.S.D.Ohio 1999)); see, e.g., In re Merrill, 192 B.R. 245, 249 (Bankr.D.Colo. 1995) ("A debtor's performance in prior Chapter 13 cases is probative of a debtor's ability and motivation to repay creditors."); In re Hundley, 103 B.R. 768, 770–71 (Bankr.E.D.Va.1989) (reviewing debtor's prior filings and finding, collectively, a demonstration of "his history of abuse of the bankruptcy system"). In cases where multiple filings have been viewed as circumstantial evidence of bad faith, the debtor whose conduct was under review exhibited disrespect for the bankruptcy process in various aspects of his case and, most often, showed no realistic intent or ability to reorganize. See, e.g., In re Brown, 399 B.R. 162 (Bankr.W.D.Va.2009); In re Smith, 395 B.R. 711 (Bankr.D.Kan.2008); In re Eatman, 182 B.R. 386 (Bankr. S.D.N.Y.1995);

■■■ A thorough review of Debtor's First, Second, and Third Cases shows that

Midwest received payments through Debtor's various confirmed plans totaling approximately $29,000.00. Even upon instances of post-petition default in her prior cases, the record reflects that Debtor made good faith efforts to cooperate with settlement orders resolving deficiencies to Midwest. Further, in all four of Debtor's cases, she has provided schedules and statements reflecting her intent and ability to reorganize. Moreover, since the dismissal of her Third Case, Debtor has experienced a change in circumstance by achieving a substantial reduction in her expenses and an increase in her income. In addition, Debtor's Plan provides for full payment of Midwest's allowed claim, ultimately providing it with over $85,000.00 upon Plan completion. At the time of the hearing on Midwest's Motion, Debtor was current on her payments under the confirmed Plan, which serves as evidence of good faith in (1) her efforts to pay Midwest and (2) her representations that she is capable of effectively reorganizing. While the Court agrees that Debtor's filings have delayed recovery of the Property by Midwest, the evidence indicates that the delay was not due to bad faith, abuse of process, or the absence of an intent to reorganize. Debtor's filing history does not involve any case in which she failed to propose a confirmable plan, neglected to file complete schedules and statements, filed excessive or unnecessary motions with the apparent attempt to delay the bankruptcy process, or fraudulently transferred property to avoid payment to creditors. Collectively, this evidence allows Debtor to meet her burden of demonstrating that her filing of four bankruptcy cases in the course of over fourteen years, without more, is insufficient to establish cause under § 362(d)(1). Debtor's prior case history and her performance in the instant case (as of the date of the hearing) do not suffice as evidence of bad faith.

■ Additionally, Debtor directs the Court's attention to Midwest's failure to object to the Court's determination of good faith in either Debtor's motion to extend the automatic stay pursuant to § 362(c)(3) or confirmation of Debtor's Chapter 13 Plan. Pursuant to § 362(c)(3), and as a result of the dismissal of Debtor's Third Case within one year of the filing of this case, the automatic stay in Debtor's current case was to be statutorily terminated on the thirtieth day after filing absent an order extending the stay. As noted above, Debtor filed a motion to extend the automatic stay on May 30, 2014 along with her petition, schedules, and statements. Midwest received notice of Debtor's motion and the related deadline for objections; no objection or response was submitted. In support of her motion and to overcome the presumption of bad faith in the filing of her current case as set forth in § 362(c)(3)(C), Debtor filed an affidavit citing in paragraph 6 the following change in circumstance since her Third Case:

Since the dismissal of the previous case, there has been a change in my financial affairs. Specifically, as follows:

a. I, Linda Jane Ford, starting receiving retirement income in the amount of $1,450.37 each month.

b. My child care expenses have decreased by $300 each month.

c. In my 2009 Chapter 13, I paid $525 to the Trustee monthly, of which $148 went to Consumer Portfolio Services for my 2005 Chrysler PT Cruiser. I now have a paid for vehicle.

Debtor's affidavit and credible testimony along with her schedules and statements demonstrated that she is capable of making payments to Midwest and that extension of the automatic stay, as it applies to Midwest, would not be to its detriment.

Absent any objection or response from Midwest and in light of the Trustee's consent to the extension of the stay, the Court found that Debtor met her burden of rebutting "by clear and convincing evidence to the contrary" the statutory presumption of bad faith as to all creditors in her filing of the instant case and granted her motion to extend the automatic stay. *See* § 362(c)(3)(C)(i) (2010). The statutory presumption of bad faith found in § 362(c)(3)(C) "is limited in its application ... to the determination of whether the automatic stay should be extended." Therefore, a finding of good faith in the granting or denial of a § 362(c)(3)(B) motion to extend the automatic stay is not controlling as to the examination of good faith in the filing of the petition for other purposes. *In re Bowen*, C/A No. 07–05485–JW, slip op. at 5 (Bankr.D.S.C. Jan. 9, 2008). However, the Court's finding of good faith at the time of such a motion may be a persuasive factor in other contexts such as a determination of cause for relief from stay under § 362(d)(1) on the grounds of bad faith.

Unlike the good faith inquiry during review of a debtor's motion to extend the automatic stay under § 362(c)(3)(B), which centers on whether the filing was in good faith with respect to each *creditor* stayed, the focus during plan confirmation is on the nature of the *debtor* and her "objective actions in bankruptcy." *In re Tomasini*, 339 B.R. 773, 779–80 (Bankr.D.Utah 2006). Among other requirements for confirmation, § 1325(a)(7) states that the court shall confirm a debtor's Chapter 13 plan if "the action of the debtor in filing the petition was in good faith." *See* § 1325(a)(7) (2010). At confirmation, this Court considers the following nonexclusive factors to determine whether a debtor filed her petition in good faith: (1) any past bankruptcy filings by the debtor, including a determination of whether the debtor experienced a change in circumstances that would warrant another filing; (2) the amount of time between the debtor's filings; (3) the debtor's pre-petition behavior; and (4) the impact of the various filings on the debtor's creditors. *See Bowen*, slip op. at 5 (Bankr. D.S.C. Jan. 9, 2008) (citing *In re Goodwin*, C/A No. 05–45110–JW, slip op. at 3–4 (Bankr.D.S.C. Dec. 19, 2005)). The same facts that demonstrated Debtor's good faith upon the grant of her motion to extend the automatic stay also provided support for the Court's finding of good faith in the filing of her petition when reviewed at the confirmation stage, as required by § 1325(a)(7): (1) Debtor has experienced a change in circumstances since the dismissal of her Third Case; (2) Debtor's filing of her four total bankruptcy cases spans the course of nearly fifteen years; (3) prior to her filing of the instant case, Debtor made multiple attempts to resolve outstanding issues relating to Midwest's debt; and (4) Midwest, in previous cases and in the instant case, has been afforded fair treatment through Debtor's various confirmed plans and is on course in this case to have its allowed secured claim paid in full.

■ Furthermore, Midwest is bound to the treatment afforded to it under Debtor's confirmed Plan in light of § 1327 and *res judicata*. *See* § 1327(a) (2010) ("The provisions of a confirmed plan bind the debtor and each creditor, .... whether or not such creditor has objected to, has accepted, or has rejected the plan."); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010); *In re Davis*, C/A No. 10–02249–JW, 2010 WL 5173187, at *2 (Bankr. D.S.C. Oct. 12, 2010) (holding that creditor was "bound by *res judicata* and [§ ] 1327 to accept its treatment under the confirmed Plan ... since it failed to object to confirmation, despite having been provided notice of the Plan and confirmation

hearing, and failed to appeal the confirmation order"); *In re Durham*, 260 B.R. 383, 386 (Bankr.D.S.C.2001). "If a [C]hapter 13 plan provides for the curing of a prepetition default on a secured creditor's claim, the secured creditor will be bound by the terms of the plan if it is confirmed ... [and confirmation of the plan] precludes a secured creditor from enforcing its lien with respect to the prepetition default." *In re Underhill*, 425 B.R. 614, 618 (Bankr.D.Utah 2010). Debtor's confirmed Plan provides for full payment, plus interest, of Midwest's allowed secured claim—the basis of which is Debtor's prepetition default—and will ultimately result in Midwest receiving over $85,000.00 upon completion of the Plan. Specifically, Midwest is to receive $1,463.00 per month, plus 5.25% interest, through the life of the Plan to be paid out through Debtor's monthly payments to the Trustee of $1,655.00.[13] The Plan was properly served upon Midwest and Midwest did not object to its confirmation nor appeal the Court's confirmation order.

Absent allegations that Debtor misrepresented or failed to disclose some material fact to the Court, the Court's prior finding of good faith in Debtor's filing of her petition in the instant case in connection with confirmation is binding upon Midwest by virtue of § 1327(a). Therefore, based on the reasons set forth above, Midwest's Motion for relief for cause pursuant to § 362(d)(1) is denied.

**b. Whether the Property is necessary for Debtor's effective reorganization pursuant to § 362(d)(2)**

Midwest further seeks relief under § 362(d)(2) on the grounds that there is no equity in the Property and the Property is not necessary for an effective reorganization. Debtor does not challenge Midwest's position as to the absence of equity. In light of the parties' agreement on the issue of equity, the Court turns its attention to the issue of whether the Property is necessary for Debtor's reorganization.

■■ "In order to meet the requirement set forth in § 362(d)(2)(B) that the property be 'necessary for an effective reorganization,' the party opposing the relief must show: '(1) that the property is essential to the reorganization effort; and (2) that there is a reasonable possibility of a successful reorganization in a reasonable time.'" *In re Madden*, C/A No. 99–08282–JW, 1999 WL 33486095, at *1 (Bankr.D.S.C. Dec. 21, 1999) (quoting *In re Trius Corp.*, 47 B.R. 3, 5 (Bankr.D.S.C. 1984)) (citing *United Savings Assoc. of Tex. v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)); *see also In re Kinard*, C/A No. 01–03621–JW, slip op. at 7, 2001 WL 1806039 (Bankr.D.S.C. Nov. 16, 2001). "In effect, an irrebuttable presumption is created in a Chapter 13 case as to the debtor's home as necessary to effective reorganization where the debtor's primary purpose in filing the Chapter 13 petition is to save [her] home." *Grundy Nat'l Bank v. Stiltner*, 58 B.R. 593, 596 n. 1 (W.D.Va.1986); *see also* 9B Am.Jur.2d Bankruptcy § 1920 (2014) (noting that the majority of Chapter 13 cases are filed for the purpose of saving the debtor's primary residence). The evidence before the Court as provided by Debtor's testimony at the hearing on Midwest's motion indicates that her main goal in filing the current case

---

**13.** At the time of this Order, the docket reflects Debtor's recent filing on October 9, 2014 of an amended Chapter 13 plan. The only changes in Debtor's amended plan is an increase in the amount to be paid to the Trustee ($1,665.00 per month for four months followed by $1,700.00 per month for fifty-six (56) months) and does not alter the treatment afforded to Midwest under Debtor's confirmed Plan.

was to restructure the debt owed to Midwest to save the Property. Furthermore, the Property, as Debtor's primary residence, appears necessary for her to generate income and thereby pay her creditors. Therefore, the evidence is clear that the Property is essential to an effective reorganization. Debtor has also demonstrated a reasonable possibility of a successful reorganization in a reasonable time: Since her Third Case, (1) Debtor's income has increased; (2) Debtor has taken steps to reduce her expenses; (3) Debtor's Plan satisfies her debt to Midwest within the reasonable time frame of sixty (60) months; and (4) Debtor's Plan has been confirmed by this Court and Debtor was current and consistent in her performance thereunder at the time of the hearing. The Court finds that Debtor has met her burden of showing the reorganization is reasonably within her reach and is not based on mere speculation. *See Kinard,* C/A No. 0103621–W, slip op. at 7. Therefore, Midwest's Motion for relief pursuant to § 362(d)(2) is hereby denied.

### c. Whether Debtor has engaged in a "scheme" to delay, hinder, or defraud Midwest pursuant to § 362(d)(4) [14]

■ Midwest further argues that Debtor filed her current bankruptcy case on the eve of foreclosure as part of an ongoing scheme to delay, hinder, or defraud Midwest. Therefore, Midwest contends that it is entitled to relief from stay pursuant to § 362(d)(4)(B).[15] In *Davis,* this Court set forth the three elements, as enumerated by § 362(d)(4), that a creditor must establish to obtain relief: "(1) that Debtor engaged in a scheme, (2) to delay, hinder, [or] defraud the creditor, and (3) which involved either the transfer of property without the creditor's consent or court approval or multiple filings." *Davis,* 2010 WL 5173187, at *4. The parties agree, through their citation of identical authority, that a "scheme," for purposes of § 362(d)(4), "is an intentional artful plot or plan to delay, hinder [or] defraud creditors." *In re Wilke,* 429 B.R. 916, 922 (Bankr.N.D.Ill.2010); *see also In re Duncan & Forbes Devel., Inc.,* 368 B.R. 27, 32 (Bankr.C.D.Cal.2006) ("A scheme is an intentional construct. It does not happen by misadventure or negligence. Thus, . . . scheme is an intentional artful plot or plan to delay, hinder or defraud creditors."); Black's Law Dictionary 1372 (8th ed.2004). Midwest contends that the dismissal of Debtor's Third Case and the filing of the instant case provide evidence of a "scheme."

■ Although Debtor has filed four cases in total, including the two relied on by Midwest as purported proof of a scheme, the Court does not find that these multiple filings constitute an artful plot or plan. Debtor's First Case was filed in 1999, nearly fifteen years prior to this case, and aimed to cure arrears on the Mortgage rather than stall or delay any pending foreclosure. Debtor's Second Case was a success—she completed all of her Chapter 13 plan payments, including a

---

14. Midwest's arguments under § 362(d)(1) are inextricably tied to those it makes under § 362(d)(4) in asserting that Debtor's current bankruptcy is part of a scheme to delay, hinder, or defraud Midwest; Midwest's position that Debtor has engaged in a scheme carries the same implications of bad faith Midwest has put forth in relation to its § 362(d)(1) arguments.

15. Midwest has not alleged that Debtor transferred all or part ownership of, or other interest in, the Property without Midwest's consent or court approval. *See* § 362(d)(4)(A). Therefore, the Court's review of the Motion on § 362(d)(4) grounds will be limited to (d)(4)(B).

distribution to Midwest of $16,730.26 of its allowed claim of $17,264.20, and received a discharge of her debts. Debtor's most recent case, the Third Case, was dismissed for non-compliance, but only after Debtor's completion of approximately four years of payments, indicating good faith efforts by Debtor to pay her creditors. Additionally, Debtor has provided testimony in relation to the instant Motion showing that she attempted to resolve the outstanding issues with Midwest in relation to the Property, including her pursuit of a mortgage modification, even after the dismissal of her Third Case.

While it is true that Debtor's multiple filings show her difficulties with paying her Mortgage debt in the ordinary course, the successful completion of her Second Case and long duration of the Third Case alongside the total payments made to Midwest throughout Debtor's various cases demonstrates her dedication to pay Midwest's debt. Undoubtedly, Debtor's bankruptcies have delayed Midwest's recovery of the Property as collateral, but without evidence that Debtor engaged in a "scheme" and thereby abused the bankruptcy process, relief under § 362(d)(4)(B) is improper. Debtor's evidence suggests that she has properly utilized the bankruptcy process in hopes of obtaining a fresh start and saving the Property, her primary residence; Midwest has provided no evidence to the contrary. Unlike the creditors in various cases cited in Midwest's Motion, Debtor's current case does not involve any allegations of fraudulent transfer. "Multiple bankruptcy filings do not alone justify relief under [§ ] 362(d)(4)(B)...." *In re Gray,* 558 Fed. Appx. 163, 166 (3d Cir.2014). In light of the foregoing evidence, Midwest's Motion for relief pursuant to § 362(d)(4) is hereby denied without prejudice.[16]

## II. Attorneys' Fees

Based on the ruling above, any request for attorney's fees and costs associated with this Motion by Midwest, including any request under the Note and Mortgage, is deemed unreasonable and hereby denied. In the objection to Midwest's Motion, counsel for Debtor requested an award of attorney's fees and costs in the amount of $5,987.50 upon the Court's finding in Debtor's favor.[17] However, no applicable relevant authority was cited by Debtor in support of such an award. Therefore, a separate scheduling order will be entered setting a hearing on the sole issue of Debtor's attorney's fees and costs.[18]

### CONCLUSION

Accordingly, in light of the foregoing, Midwest's Motion for Relief from Stay under § 362(d)(1), (2), and (4) is **DENIED.** A further hearing on the issue of Debtor's

16. Due to the Court's denial of relief from stay on all three grounds advanced in Midwest's motion, the issue of *in rem* relief is not reached. The Court also notes that Debtor is bound to the prior consent order entered by this Court stating that dismissal of the instant case will result in a prejudice period of one year during which Debtor will be unable to file an additional bankruptcy case under Chapter 11, 12, or 13. This consent order provides Midwest protection from an immediate filing of another case in the event completion of her Plan (and thus full payment of Midwest's allowed secured claim) and subsequent discharge of her debts is not attained.

17. Counsel made her request for attorney's fees in Debtor's objection to Midwest's Motion as well as at the hearing. Affidavits were provided by counsel in support of the amount requested.

18. The Court anticipates further hearing may increase the award amount requested by Debtor's counsel.

attorney's fees and costs will be set by subsequent order.

**AND IT IS SO ORDERED.**